IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**A.P., a minor child, by and through her mother
and legal guardian, LAVERNE PLATERO**,

     Plaintiff,

v.                                                                                                          No. CIV 08-1087 BB/WDS

**GALLUP-McKINLEY COUNTY SCHOOLS
and GALLUP-McKINLEY COUNTY
SCHOOLS SCHOOL BOARD**,

     Defendants.

## MEMORANDUM OPINION

     This matter comes before the Court on Defendants' motion to dismiss (Doc. 14). Having considered the submissions of the parties and the applicable law, the Court finds Plaintiff must exhaust her administrative remedies before proceeding with this action. For that reason, the motion will be granted and the complaint will be dismissed without prejudice.

## FACTS AND PROCEDURAL HISTORY

     At the time this lawsuit was filed Plaintiff was a minor child attending Thoreau Middle School in Thoreau, New Mexico; according to the parties she is now enrolled in Thoreau High School. Plaintiff has been physically disabled for a number of years, in that she is paralyzed from the waist down as an unfortunate result of being struck by a motor vehicle. Plaintiff is not impaired intellectually and is capable of functioning at least at an average level in her studies. However, she is confined to a wheelchair and her mobility at school is therefore somewhat restricted. In addition, she must eliminate waste from her bladder through a catheter and requires assistance from another person in order

to insert the catheter. Plaintiff and her mother became frustrated with several aspects of Plaintiff's treatment at the hands of Thoreau Middle School and its personnel. As a result, Plaintiff filed this lawsuit seeking monetary damages and injunctive relief under two federal statutes: Section 504 of the federal Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

Plaintiff's lawsuit raises the following complaints about her treatment by her school: (1) the school failed to have a trained individual available to assist Plaintiff with the catheterization process, as the nurse's aide was unable or unwilling to provide such assistance; (2) the school failed to remove or remedy the existence of several physical barriers to wheelchair access, which deprived Plaintiff of access to the school's cafeteria and made it more difficult for her to access several of her classrooms; (3) the school refused to allow Plaintiff to become a manager for the school's basketball team, because the bus used by the team was not wheelchair-accessible; (4) the only bus transportation provided to Plaintiff did not allow her to attend the same number of school-hours as that provided to non-disabled students, because the bus left the school approximately 30 minutes early each day; and (5) the school suspended Plaintiff and retained her in the seventh grade without following required procedures.

In response to the complaint, Defendants filed this motion to dismiss, arguing Plaintiff must exhaust administrative remedies that are available to her pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.* These remedies include, *inter alia*, a "due process hearing" in front of a hearing officer and are authorized by Section 1415(i) of the IDEA. Plaintiff's response brief took the position, in part, that Plaintiff is not eligible for services under the IDEA, and therefore was not

required to exhaust any remedies that might have been available under that statute. Subsequently, the Magistrate Judge presiding over the preliminary proceedings in this case held a settlement conference, and the parties agreed that an evaluation should be conducted to determine "whether the Child is eligible for special education benefits." [Doc. 25] The Magistrate therefore stayed all proceedings in this case pending such an evaluation, which resulted in an Individualized Education Program ("IEP"). According to that IEP, which has been submitted to the Court and reviewed *in camera*, Plaintiff is eligible for services under the IDEA and such services will be provided at Thoreau High School. Plaintiff nevertheless maintains she was not required to exhaust any administrative remedies that might have been available under IDEA, for several reasons. The Court addresses these arguments below.

## STANDARD OF REVIEW

Ordinarily, in deciding a motion to dismiss the Court is required to accept all of the well-pleaded allegations in the complaint as true, and to disregard any information that is not contained in the complaint. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). When the motion is based on an asserted failure to exhaust administrative remedies, however, this standard cannot apply; otherwise a plaintiff could always avoid dismissal simply by alleging that she has exhausted all available administrative remedies. Instead, a court deciding a failure-to-exhaust question may consider evidence beyond the pleadings, determine facts, and decide the ultimate issues of whether exhaustion is legally required and, if so, whether it was accomplished satisfactorily. *See, e.g., Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir. 2003).[1]

---

[1]*Davis* addressed exhaustion of remedies as a jurisdictional question. The Court acknowledges Plaintiff's contention that failure to exhaust is no longer jurisdictional but

## DISCUSSION

Plaintiff's complaint contains no claim under the IDEA statute. Even where no IDEA claim is raised, however, exhaustion of the administrative remedies provided under IDEA is generally required when a student brings a lawsuit against a school under federal statutes such as the ADA or Section 504. *See, e.g., Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1279-80 (10th Cir. 2007); 20 U.S.C. § 1415(l). There are several exceptions to this requirement, three of which have been discussed by the parties in this case: (1) if exhaustion of remedies would be futile, because no relief could be obtained through the administrative process, exhaustion will be excused; (2) if the claims raised by the plaintiff are not "educational in nature" exhaustion will not be required; and (3) if the agency has adopted a policy of general applicability that is contrary to law, and this action has rendered the agency's expertise and the factual development of an administrative record less important, exhaustion will be excused. Each of these exceptions, of course, has its own complications, as discussed below.

---

is simply an affirmative defense that may be waived. Plaintiff relies on *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court in *Bock* decided that under the Prisoner Litigation Reform Act ("PLRA"), failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. The Court need not decide in this case whether Plaintiff is correct. It is clear to the Court that, if exhaustion of remedies is not in fact a jurisdictional matter, it is still a question that must be resolved at the outset of the litigation if it has been raised by the defendant, as has occurred in this case. It is undisputed that Plaintiff did not attempt to exhaust any administrative remedies prior to filing her lawsuit. The only question, therefore, is whether she was legally required to do so. In answering that question the Court has relied solely on the allegations of the complaint or on matters that are undisputed (*i.e.*, the IEP obtained pursuant to the agreement of the parties). Furthermore, neither party has requested an evidentiary hearing to attempt to prove any facts that might be relevant to the inquiry. Therefore, it appears to be irrelevant whether the exhaustion question is decided as a motion to dismiss or as a motion that has been converted to a motion for summary judgment. Each party having been given an opportunity to present all information deemed relevant to the question, the requirements of due process have been satisfied.

**Futility:** In her briefing papers Plaintiff maintained she was not eligible for special-education services while attending Thoreau Middle School, was therefore not entitled to the benefits of the IDEA, and consequentially was not subject to the requirements of that statute, including the exhaustion-of-remedies mandate. In other words, exhaustion of remedies would be futile because the administrative process could not provide any relief to a student, such as Plaintiff, who is not eligible for services under the IDEA in the first place. It appears that Plaintiff has abandoned that argument, as it was not mentioned during oral argument on the motion to dismiss. If that is true, it is most likely because the IEP prepared pursuant to the agreement of the parties states in several places that Plaintiff is indeed eligible for special-education services under the IDEA. [IEP pp. 5, 6] Thus, the factual basis for Plaintiff's argument appears to have been removed.

In case Plaintiff has not in fact abandoned this argument, the Court will address it briefly. Plaintiff's argument was primarily based on the fact that she is not intellectually impaired, but has the ability to succeed academically at an average level, at minimum. As a result, Plaintiff argued she is not eligible for special-education services. Contrary to Plaintiff's argument, however, special-education services under the IDEA are not limited to students who are intellectually impaired. Instead, the statute and regulations promulgated thereunder specifically cover students with orthopedic impairments, if those impairments create a need for "special education and related services" or adversely affect the student's educational performance. 20 U.S.C. § 1401(3)(A); 34 CFR §§ 300.8(a)(1), 300.8(c)(8). The crucial question, therefore, is not whether Plaintiff was capable of performing at an average level academically, but whether her orthopedic impairment adversely affected her ability to do so and created a need for educational services that

5

could rectify the problem. Plaintiff's complaint alleged in several places that her educational opportunities did suffer as a result of her impairment, or at least as a result of Defendant's failure to adequately accommodate that impairment. [Doc. 1, ¶¶ 14, 15, 20, 30, 32, 33, 43, 44] It is an open question, therefore, whether Plaintiff's impairment prevented her from receiving the type of education to which she was entitled under the IDEA while she was attending Thoreau Middle School. This question could have been answered had Plaintiff pursued her administrative remedies prior to filing this lawsuit – during the administrative proceedings her eligibility for IDEA services, or lack thereof, would have been determined. Plaintiff's argument that she was categorically not eligible for IDEA services, and therefore that exhaustion would have been futile, is therefore not persuasive. *See, e.g., Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066 (10th Cir. 2002) (where student has not yet been identified as eligible for services under the IDEA, student may still be required to exhaust his remedies by pursuing administrative proceedings in an attempt to be declared eligible for such services).

**Educational Nature of Claims:** Plaintiff has also argued that her claims for relief are not educational in nature, but are purely discrimination claims. This argument is an attempt to fit her claims within the parameters of the Tenth Circuit's *Ellenberg* case, 478 F.3d 1262. In *Ellenberg*, the Tenth Circuit explained the IDEA exhaustion-of-remedies requirement as follows: where a claim for relief is educational in nature, whether it is brought under the ADA or Section 504, exhaustion of IDEA remedies will be required; on the other hand, if the claim is purely a discrimination claim, exhaustion will not be required. Unfortunately, the educational-in-nature standard can easily get quite muddled; in one sense, anything a school does or does not do could be considered educational in nature simply because it involves a school. In fact, *Ellenberg* itself

6

contributes to the confusion. The opinion pointed out that one of the plaintiff's claims, that she was discriminatorily denied admission to the school of her choice, was arguably educational in nature, but held that exhaustion would not be required because the IDEA could not offer any relief to the plaintiff. This is perhaps a better standard, and is one stated in several Tenth Circuit opinions – if through administrative proceedings some relief could be granted to the plaintiff for the deficiencies about which she complains, the plaintiff must exhaust her remedies by initiating and completing such proceedings prior to filing suit. *See, e.g., Padilla v. Sch. Dist. No. 1 in City and County of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000) ("In essence, the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies.").[2]

      Plaintiff argues that her claims in this case are pure discrimination claims like the failure-to-admit claim in *Ellenberg*, and she therefore was not subject to the exhaustion requirement. An examination of the claims, however, shows that each claim has an educational component, and Plaintiff therefore could have obtained some relief if she had successfully pursued administrative proceedings. Plaintiff claims, first of all, that Defendant failed to ensure a trained individual would be available to assist Plaintiff with the catheterization process. As a result of this failure, Defendant allegedly failed to provide services designed to "meet [Plaintiff's] individual educational needs" to the same extent as the needs of non-disabled children were met. [Complaint, Doc. 1, ¶ 30] In other

---

[2]The Court notes that in the Tenth Circuit, unlike at least one other Circuit, the fact that monetary damages might not be available through IDEA administrative proceedings is not a basis for excusing exhaustion of administrative remedies, if the injuries alleged are educational in nature. *See Padilla,* 233 F.3d at 1275; *Cudjoe,* 297 F.3d at 1068; *compare W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995), *abrogated on other grounds*, *A.W. v. Jersey City Pub. Schs.,* 486 F.3d 791, 799 (3d Cir. 2007).

words, Defendant allegedly failed to provide supportive services that would have allowed Plaintiff to attend school without having to suffer embarrassment, humiliation, or other significant discomfort that might have jeopardized her ability to remain in school. This is one of the types of services the IDEA is designed to provide – assistance in overcoming medical conditions that create serious problems for disabled children at their schools. *See, e.g. , Cedar Rapids Cmty. Sch. Dist. v. Garret F.,* 526 U.S. 66, 77-79 (1999) (school was required to provide continuous nursing care to quadriplegic student who would not be able to remain in school without such care); *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 892-94 (1984) ("related services" that must be provided to student included clean intermittent catheterization). It appears an administrative hearing officer could have ordered the school to ensure that a trained individual would be present at all necessary times, should such action be deemed necessary under the IDEA. Therefore, Plaintiff could have obtained some relief through the administrative process for this claim.[3]

Plaintiff also complains that Defendants failed to remove or remedy the existence of several physical barriers to wheelchair access, which deprived Plaintiff of access to the school's cafeteria and made it more difficult for her to access several of her classrooms. In addition, she alleges she was denied access to extracurricular activities, specifically the opportunity to be a manager for the basketball team, because the team bus was not wheelchair-accessible. The problem of access to classrooms is certainly educational in nature, and is a problem that could have been relieved through the administrative process.

---

[3]It must be emphasized that the Court is not pre-judging Plaintiff's claims in any way. Plaintiff may or may not have succeeded with her claims during the administrative process. The point is, however, that if she had pursued her remedies and succeeded, the administrative process could have afforded her at least some relief for the deficiencies about which she now complains.

If Plaintiff's education was suffering due to her difficulties in getting to her classes on time, or at all, an administrative order requiring that she be provided adequate access to the classrooms would certainly appear to be warranted under the IDEA. The statute requires that "[t]o the maximum extent appropriate, children with disabilities ... are educated with children who are not disabled." 20 U.S.C. § 1412(a)(5). To that end, schools are required to provide "supplementary aids and services" to enable children with disabilities to be educated with non-disabled children. 20 U.S.C. § 1401(33). It seems obvious to the Court that such supplementary aids and services could include removal of access barriers to classrooms, or provision of some other method by which Plaintiff could reach all of her classrooms adequately. *Cf., e.g., Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 247-48 (2d Cir. 2008) (question of whether student should be allowed access to school with a service dog implicated IDEA, and exhaustion was therefore required).

At first blush, access to the cafeteria and to extracurricular activities seems to be in a different category than access to a classroom, and seems somewhat removed from educational issues. However, one goal of the IDEA is to "mainstream" disabled students to the greatest extent possible. *See* § 1412(a)(5). This concept includes more than simply classroom instruction; it applies to all activities that take place during school hours or under school supervision and that provide opportunities for students to socialize with each other and learn life skills. *See, e.g., Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F.Supp.2d 1136, 1146 (D. Wyo. 2003) (classroom learning is just one facet of educational experience; extracurricular activities are an essential component of that experience). The IDEA and the regulations promulgated to enforce that statute make this point explicitly. By statute, a student's IEP must demonstrate, among other things, how

9

the school will employ special education as well as supplementary aids and services to help the student participate in extracurricular and other nonacademic activities. 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb). These extracurricular and nonacademic activities specifically include athletics and meals. 34 C.F.R. §§ 300.107, 300.117. Therefore, Plaintiff's claims arising out of alleged lack of access to the cafeteria and the team bus could have been addressed in an IDEA administrative proceeding. Furthermore, if the claims were found meritorious, some type of relief could have been afforded Plaintiff to remedy the deprivation of these opportunities. *See, e.g., Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 735 F.Supp. 753 (M.D. Tenn. 1990) (enforcing hearing officer's order which, in effect, found participation in athletics to be integral part of student's IEP).

Plaintiff's claim that she was required to leave school thirty minutes early to catch the bus is obviously related to her educational opportunities; she was allegedly deprived of thirty minutes of instruction, or at minimum socialization, because she had to leave school before all of her non-disabled peers. The Court can conceive of no reason why the IDEA would not potentially apply to such a claim and potentially provide some relief for the problem. As noted above, the IDEA requires that schools provide disabled students with equal access to academic activities as well as nonacademic services and activities, specifically including transportation. 34 C.F.R. § 300.107. Shortening Plaintiff's school day if she wished to ride the bus home could easily violate that requirement, which would mean the IDEA administrative process could provide Plaintiff some relief if she prevailed on this claim.

Plaintiff's final claim is that she was suspended from the school on a long-term basis, and also retained in the seventh grade, "without regard to required state and federal

10

procedures." [Doc. 1, ¶ 32] Again, this appears to be a claim as to which relief, in part or in whole, could have been obtained through the IDEA administrative process. Plaintiff alleges she was suspended and held back due to discrimination on the basis of her disability; it would seem that both of these actions might have been avoided if Plaintiff had been provided sufficient services to address the problems created by her disability. The provision of such services is the main focus behind the IDEA, and therefore the IDEA administrative process could have addressed these issues. *See, e.g., Dohmen v. Twin Rivers Pub. Schs.*, 207 F.Supp.2d 972, 989 (D. Neb. 2002) (principal injury alleged by student was his expulsion from school; full or partial redress for this injury presumably was available through the IDEA procedures). Accordingly, Plaintiff should be required to exhaust those remedies before resorting to a lawsuit.

In sum, assuming Plaintiff could have established the proper facts, she would have been able to obtain at least some relief for all of the actions or inactions that are the subject of this lawsuit. Put another way, all of her claims are "educational in nature" to some degree. The fact that she cannot obtain redress for all of her injuries, such as her alleged emotional distress, in the administrative proceedings does not affect the exhaustion requirement. Therefore, Plaintiff's pure-discrimination argument under *Ellenberg* is not persuasive.

**Policy of General Applicability:** Plaintiff raised this argument for the first time at oral argument on the motion to dismiss. Based on the legislative history of the IDEA's exhaustion-of-administrative-remedies provision, courts have established an exception to the exhaustion requirement if an agency has adopted a policy of general applicability that is contrary to law, and the underlying purposes of exhaustion would not be served if exhaustion was required. *See McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d

11

868, 875 (10th Cir. 2007). Plaintiff maintains that her discrimination claims fit into this exception. For several reasons, the Court disagrees.

In the Tenth Circuit, this exception has been construed narrowly. *See id.*, 488 F.3d at 875 n. 1 (noting that the Tenth Circuit has never excused a party's failure to exhaust remedies pursuant to this exception). It is not clear to the Court, therefore, that one school's objectionable policy or practice would be sufficient to trigger this exception. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1304-05 (9th Cir. 1992) (exhaustion is not excused under this exception simply because a challenge involves policies applied to all students; typically exhaustion will be excused only where the plaintiff challenges serious procedural deficiencies in the entire IDEA process, such that resort to the courts is the only meaningful source of a remedy; complaint focused on a particular shortcoming of one school district's special-education program does not meet the requirements of this exception). It should also be noted that this exception is not triggered simply by framing the complaint as a challenge to a policy rather than a deficiency in the provision of this particular Plaintiff's education. Instead, the Court must examine the underlying bases for Plaintiff's claims rather than the label that has been attached to them. *See McQueen, supra*, 488 F.3d at 875-76 (even though plaintiff claimed the district's policies and guidelines facially violated the IDEA, the ultimate issue in the case was whether plaintiff received an appropriate education or was denied the free appropriate public education to which he was entitled; therefore, exhaustion was not excused under the policy-of-general-applicability exception). In addition, to fit into this exception the policy or practice about which Plaintiff complains must involve a pure issue of law rather than any factual inquiry. *See id.* at 875. Finally, even if Plaintiff can show the existence of a policy or practice of general applicability that involves only the

legal question of whether that policy or practice is contrary to law, exhaustion may still be required if the purposes behind the exhaustion requirement will be served. *See id.*

With the above in mind, the Court turns to Plaintiff's specific claims in this case. Several of the claims obviously do not concern policies of general applicability. Plaintiff's catheterization claim affects her alone; she has not alleged there are other students at Thoreau Middle School who need catheterization but are denied the same due to a school policy. In fact, Plaintiff's complaint itself establishes there is no such general policy; the school allegedly attempted to provide Plaintiff the assistance she needs but failed to do so due to the alleged shortcomings of a particular employee and due to the school's failure to address those shortcomings. This raises factual issues rather than legal issues, and this claim therefore does not meet the requirements of the general-applicability exception.

Similarly, Plaintiff's allegations concerning the existence of barriers that hinder her access to the cafeteria and to several classrooms, and the refusal to allow her to become a manager for the basketball team due to the lack of a wheelchair-accessible team bus, are specific to Plaintiff alone. There is no indication in the complaint that these access barriers hinder any other disabled students from fully participating in the school's academic or social environment or in extracurricular activities. There is also no allegation of a school-wide policy forbidding all disabled students from acting as team managers or from participating in other extracurricular activities. Furthermore, the nature of these barriers and the extent to which they interfere in Plaintiff's school life are factual questions rather than pure issues of law. These claims therefore do not fit into the general-applicability exception.

Plaintiff's suspension and retention claims cannot be construed as anything but personal claims concerning the manner in which she, as a disabled student, has been treated. Again, there are no allegations in the complaint regarding a disciplinary policy or retention policy that applies to all disabled students. Also, the reasons for the suspension and retention, as well as the question of whether the school followed appropriate procedures in taking these actions, are for the most part factual matters rather than questions of law.

Plaintiff's final claim, concerning the early departure of her school bus, comes closest to alleging a policy of general applicability. Plaintiff has alleged in essence that the school has a policy under which the special-education bus leaves school approximately 30 minutes early each day. This policy allegedly applies to all disabled students who must ride the bus to get home from school. [Doc. 1, ¶ 15] Some opinions, including at least one from this District, have concluded that a blanket policy shortening the school day for disabled children is not subject to the IDEA's exhaustion requirement. *See Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1212 (9th Cir.2004); *Barr-Rhoderick v. Bd. of Educ. of Albuquerque Pub. Schs.,* 2005 WL 5629693 (D. N.M. 2005, unpublished). However, under the IDEA the length of the school day may be reduced for a disabled student if such reduction is appropriate given that student's particular situation. *See Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 129 (5th Cir. 1993) (discussing student's shortened school day as essential component of his IEP); *Barr-Rhoderick*, *supra* (discussing evidence that shorter school day was part of the student's IEP). In this case, Plaintiff did not pursue any remedies under the IDEA and did not attempt to obtain an IEP, which might have either authorized a shortened school day or required the school to transport Plaintiff on a later bus. Plaintiff's situation is thus

14

unlike those of the plaintiffs in *Christopher S.* and *Barr-Rhoderick*; in the former case, the plaintiff had unsuccessfully pursued administrative remedies other than those available under the IDEA, and in the latter the plaintiff had already obtained several IEPs, at least one of which discussed the possibility of a shortened school day.[4]  In both of those cases, therefore, the school district in question was given an opportunity to address the validity of its blanket policy as applied to the particular student in question, while in this case the Thoreau Middle School has not had such an opportunity.   The Court therefore finds that, even if the policy alleged in this case qualifies as a policy of general applicability that is contrary to law, the purposes of the exhaustion requirement would still have been served by requiring exhaustion.  This is so because exhaustion would have allowed the school an opportunity to change the policy, or allowed a hearing officer with expertise in this area to force the school to make an exception for Plaintiff, unless the shortened school day could be justified given Plaintiff's unique educational situation. *See Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 814 (10th Cir.1989) (purposes of exhaustion include giving the agency an opportunity to exercise its discretion and expertise, and avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error).

      The Court therefore finds, based on the foregoing discussion, that Plaintiff's claims either do not implicate policies or practices of general applicability or, if they do, exhaustion is still required because the purposes of the exhaustion doctrine would have been served.

---

[4] It should be noted that the *Barr-Rhoderick* opinion did require the plaintiff to exhaust his administrative remedies insofar as his IEPs might have authorized a shorter school day.

**Futility Based on Mootness:** The Court has considered one issue that has been touched on by the parties but has not been addressed in the briefs or at oral argument. This issue arises because Plaintiff no longer attends Thoreau Middle School, and it therefore might seem anomalous to require Plaintiff to now file an administrative claim even though the hearing officer's decision, if favorable, can provide Plaintiff no relief. In other words, removing the access barriers at the school will not help Plaintiff because she no longer attends that school, and the same mootness issue permeates her other claims. However, the Tenth Circuit has firmly stated that exhaustion will not be excused simply because, at the current time, the administrative process can provide no relief; the relevant inquiry is whether such relief could have been provided had the plaintiff timely invoked the administrative process. *See, e.g, Cudjoe v. Indep. Sch. Dist. No. 12*, , *supra*, 297 F.3d at 1067. Furthermore, the administrative proceedings will not be a completely useless exercise because the factual determinations made by the hearing officer, who presumably will be a person with expertise in this area, may be useful in deciding Plaintiff's ADA and Section 504 claims and evaluating the impact of any violations on Plaintiff.

## CONCLUSION

Based on the foregoing, the motion to dismiss will be granted and this case dismissed without prejudice, to allow Plaintiff to first pursue her administrative remedies before further litigation is initiated.

Dated this 3rd day of December, 2009.

**BRUCE D. BLACK**
**UNITED STATES DISTRICT JUDGE**